# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **HAROLD D. HILTON,** | ) | |
| **PLAINTIFF,** | ) | |
| **VS.** | ) | **2:10-cv-168-JHH** |
| **MARS PETCARE US, INC.; and**<br>**DOANE PETCARE COMPANY,**<br>**INC.,** | )<br><br>) | |
| **DEFENDANTS.** | ) | |

## MEMORANDUM OF DECISION

The court has before it the October 13, 2010 motion (doc. # 25) of Defendants Mars Petcare US, Inc. ("Mars") and Doane Petcare Company, Inc. ("Doane") for summary judgment. Pursuant to the court's October 25, 2010 order (doc. # 28), the motion was deemed submitted, without oral argument, on December 13, 2010. After careful review of the briefs and admissible evidence, the court concludes that the motion (doc. #25) is due to be granted for the following reasons.

## I. Procedural History

Plaintiff Harold D. Hilton commenced this action on January 26, 2010 by filing a complaint in this court alleging violations of 42 U.S.C. § 1981. Plaintiff contended that Defendants' alleged conduct constitutes race discrimination and retaliation.

More specifically, Plaintiff contends that he was terminated because of his race and that he was retaliated against in his termination.  (*See* Compl. ¶¶ 20-22, 24-25.) Defendant's October 13, 2010 motion (doc. #25) for summary judgment contends that Plaintiff's claims fail as a matter of law because Plaintiff failed to rebut Defendants' legitimate, nondiscriminatory and nonretaliatory reasons for Plaintiff's termination.

Both parties have filed briefs and submitted evidence in support of their respective positions.  Defendants submitted evidence[1] (docs. # 25, 29, 30) in support of their motion for summary judgment on October 13, 2010 and November 15, 2010 and filed a supporting brief (doc. #29) on November 15, 2010.  On December 6, 2010, Plaintiff filed a brief and evidence[2] (doc. # 31) in opposition to Defendants' motion for summary judgment.  On December 13, 2010, Defendants filed a brief and evidence[3] (doc. # 34) in reply to Plaintiff's opposition to summary judgment.  The

---

[1] Defendants submitted the following evidence in support of summary judgment: deposition of Plaintiff; deposition of Oscar Harrell; copy of first page of union agreement; decision of unemployment compensation claim; 1/30/08 Grievance Report; 1/28/08 Employee Corrective Action; 1/26/08 Incident Reports by Ed West, Kelvin Graham; statement from Mark Marsa regarding 1/10/08; 1/11/08 verbal counseling report; 1/29/08 Employee Corrective Action; 9/6/06 Note for File; arbitration decision; union post-hearing brief in arbitration; arbitration brief of Mars; EEOC Dismissal and Notice of Rights; Mars EEOC Position Statement; and affidavit of Oscar Harrell with attached exhibits.

[2] Plaintiff submitted the following evidence in opposition: affidavit of Plaintiff.

[3] Defendants submitted the following evidence in reply: excerpts from Plaintiff's deposition; affidavit of Kelvin Graham with attached exhibits; and summary judgment order in cv-95-H-525-S.

court notes that not all the evidence submitted was considered on summary judgment and refers to the court's order (doc. # 41) on the motions to strike (docs. # 32 & 36) for a detailed explanation of the evidence struck from the record.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000)  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249.  The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party

4

may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S.

555, 561 (1992)).

## III. Relevant Undisputed Facts[4]

Hilton, an African American, began his employment with Defendant Doane[5] in April of 1970, and was employed as a maintenance worker at Doane's facility in Birmingham, Alabama. (Hilton Dep. at 8.) While employed with Doane, Hilton maintains that he was involved in successful litigation to gain equal pay for African American maintenance workers. (Hilton Aff. ¶ 3.) He also served as a union representative and represented employees who brought grievances against the company. (Id.)

The facility where Hilton worked was purchased by Defendant Mars in the summer of 2006.[6] (Harrell Dep. at 11-12; Hilton Dep. at 8-9.) Mars contends that it has no information regarding the practice, procedures, or any employee matters that existed before the merger of Mars and Doane. (Harrell Dep. at 8, 11.)

Sometime in 2007, Hilton was promoted to the position of maintenance lead,

---

[4] Facts are undisputed unless otherwise expressly noted. If the facts are in dispute, they are stated in the manner most favorable to the plaintiff. See Fitzpatrick, 20 F.3d at 1115.

[5] When Hilton began his employment is was actually with "Jazz- Dog Food, Cosmo-Hodges" which was sold to another company before Doane acquired it. (Hilton Dep. at 8-9.)

[6] The parties dispute whether Doane ceased to exist after Mars purchased the facility. However, the court does not have to make a determination on this dispute since it is granting summary judgment for Defendants.

in part to lighten the load of the maintenance supervisor.  (Hilton Aff. ¶ 6.)  Hilton testified that as the maintenance lead, he "directed other maintenance workers on their job assignments."  (Id.)  According to Hilton, he was an exemplary, dedicated employee.  (Id. ¶ 2.)  Mars, however, contends that he had occasional run-ins with other employees and had a tendency to yell at his co-workers and supervisors and otherwise lose control of his temper.  (Doc. #29 at 5.) Hilton disputes this contention, but instead claims that he naturally speaks loudly.  (Hilton Aff. ¶ 8.)

Hilton had several run-ins with an employee from a temporary staffing company utilized by Mars.  The temporary employee, Fred Long, a white male, worked with Hilton in the maintenance department.  (Hilton Aff. ¶ 6.) Hilton testified that Long "did not accept direction from" Hilton, and that even after reporting his problems with Long to management, Hilton did not receive any support.  (Id.)  In fact, Hilton alleges that Long would instead go to Hilton's direct supervisor, Maintenance Manager Ed West, a white male, to receive his work orders and that he would also complain to West about Hilton.  (Id.)  Defendants maintain, however, that Hilton had several verbal confrontations with Long, and that as a result of these confrontations West and Operations Manager Mark Marsa held "coaching sessions" with Hilton and Long in an attempt to resolve their conflicts.  (Id.; see also Defs.'s Exh. C at MPCB 87-88.)

7

In January 2008, Hilton had "another conference with supervisors" regarding a verbal confrontation which occurred during a training meeting. (Hilton Aff. ¶ 7; Doc. #29 at 5.)  Defendants contend that during the meeting, Hilton was so loud and disruptive that Kelvin Graham, the Plant Manager, had to instruct Hilton twice to quiet down.   (Id.)   Defendants also contend that Hilton was derogatory and confrontational with Long, stating that Long had no rights at the company or any say in what was discussed at the meeting.  (Id.)  Graham placed a write-up in Hilton's personnel file regarding the incident, but Hilton never saw the write-up until this litigation. (Hilton Aff. ¶ 7.)

On January 26, 2008, Long quit his temporary employment with Mars. (Harrell Dep. at 85-90.)  As Long walked out of the facility with West,[7] and through the parking facility where his vehicle was parked, Hilton came out to the parking area looking for Long.  (Id.)  Hilton was looking for Long to assist in performing a certain maintenance task and was unaware of his resignation.  (Hilton Aff. ¶ 9.)  West told Hilton that Long had resigned his employment, and as Hilton was returning to the building, Long told Hilton that he "got what [he] want[ed]."  (Id.)  At this point, the versions of what happened deeply contradict.  The court first recounts Hilton's

---

[7] Long and West were discussing a pay discrepancy in his last paycheck.  (Harrell Dep. at 85-90.)

8

version of what happened, then next recounts Defendant's version of events.[8]

### Hilton's Version

Hilton testified that he was surprised by Long's comment, turned around and told Long that he did not know what he was talking about.  (Hilton Aff. ¶ 10.) According to Hilton, Long then began cursing at him and became aggressive with his cursing, to the point that Hilton considered his actions threatening.  (Id. ¶ 11.) Hilton told West that he did not have to endure this type of behavior.  (Id.)  Long then became even more aggressive and began to walk toward Hilton.  (Id.)  West warned Long to leave the property, but Long continued his verbal assault of Hilton.  (Id.) West then stepped in front of Long in an attempt to restrain Long.  (Id.)  Long then told Hilton that he would "whip [his] ass."  (Id.)  Hilton testified that Long was so aggressive that he did not want to turn his back on him, and that at some point during the altercation, Long went to his car to get a baseball bat.  (Id.)  West continued to tell Long to leave and that he was going to call the police.  (Id.)  Eventually, Long left the premises.  (Id.)

Hilton testified that although he did "speak back" to Long, he was not aggressive in any way.  (Id.)  He adamantly denies ever brandishing a screwdriver in

---

[8] The court is aware of its obligation to consider the evidence in the light most favorable to Plaintiff.  However, because there is an issue as to what Defendant believed happened (and not necessarily what actually happened), the court recounts both versions of the incident.

any manner toward Long, although he admits that he carries tools on his person as a maintenance worker.  (Id.)

### Defendants' Version

According to the Defendants, after Long told Hilton that he got what he wanted, Hilton and Long continued to exchange words, with Hilton growing increasingly louder as the conversation continued.  (Harrell Dep. at 85-90.)  Hilton told West that "he did not deserve to be talked to that way and that he did not have to take this."  (Def.'s Exh. C, West statement.)  At some point, Long told Hilton that he had yelled at him for the last time and that he would "whip his ass all over the parking lot."  (Id.)  When West heard this and realized that the incident was escalating, he stepped between the two and told Hilton to go back to work and that West would handle the situation.  (Id.)

At this point, West stated that Hilton pulled a screwdriver from his back pocket and cupped it in his hand.  (Id.)  He then told Long to "come on and whip [his] ass."  (Id.)  While West told Long to leave the premises or he was calling the police, West grabbed Hilton to "hold him back."  (Id.)  Hilton tried to run towards Long, but West was pushing him back.  (Id.)  Todd Burks, a maintenance associate, heard the commotion from inside and came out of the building into the parking lot.  (Id.)  He helped to restrain Hilton while West focused on Long.  (Id.)

10

After Hilton pulled out his screwdriver, Long went back to his truck to retrieve a baseball bat.  (Id.)  Long then told Hilton that he had "something for that screwdriver."  (Id.)  At that point, West and Burks were able to diffuse the situation before anything else occurred.  (Id.)  West did call the police as a result of the incident, but West was able to get Long to leave before the police arrived.  (Id.)

At this point, the two stories merge again.   After the confrontation, an investigation was conducted regarding the incident.  (See Graham Aff. ¶¶ 7-13.)  All the witnesses were interviewed and statements were taken.  (Id.)  Because Long had already quit his temporary employment, no further action was taken against him. Kelvin Graham, the Site Manager, and Oscar Harrell, Personnel and Organizational Manager, both African American males, made the decision to terminate Hilton after the investigation.  (Id. ¶ 14; Harrell Aff. ¶ 11.)  Graham and Harrell believed that Hilton escalated a situation that was being handled by West in an appropriate manner, and believed that Hilton used his screwdriver as a weapon during the incident.  (Id.) Hilton was terminated on January 29, 2008, for his role in the confrontation, which included brandishing a tool as a weapon.  (Harrell Dep. at 52-53; Graham Aff. ¶ 13.)

After his termination, Hilton filed a grievance with the union and an arbitration hearing was held.  (Graham Aff. ¶ 18; Ex. C to Graham Aff.)  The arbitrator concluded that Mars was justified in its discharge of Hilton and denied the union

11

grievance.  (Graham Aff. ¶ 19; Ex. D. to Graham Aff.)   Additionally, Hilton filed an

EEOC charge of discrimination on March 23, 2009, alleging race and age

discrimination as well as retaliation.  (Graham Aff. ¶ 21; Ex. F to Graham Aff.)  On

May 20, 2009, the EEOC issued a Dismissal and Notice of Rights letter, concluding

that Hilton's charge of discrimination was untimely.  (Graham Aff. ¶ 22; Ex. G to

Graham Aff.)

Hilton also filed a claim for unemployment compensation after his termination.

(Graham Aff ¶ 20; Ex. E to Graham Aff.)  The examiner originally determined that

Hilton was eligible for unemployment benefits, but Mars appealed that decision. (Id.)

A hearing was held before an administrative hearing officer.  (Id.)  That officer

reversed the findings of the examiner and found that Hilton was disqualified from

receiving unemployment compensation because he was discharged for actions

"contrary to reasonable standards and [those actions] constitute[] misconduct

connected with work."  (Ex. E to Graham Aff.)

## IV. Applicable Substantive Law and Analysis

Plaintiff's complaint contains two causes of action, both contemplated under

42 U.S.C. § 1981.  First, Plaintiff contends that he was discriminated against because

of his race when he was terminated.   Second, Plaintiff contends that he was

terminated in retaliation for activity protected under section 1981.   The court

examines each claim in turn.

## A. Plaintiff's Disparate Treatment Claim Fails as a Matter of Law.

Plaintiff claims disparate treatment racial discrimination under 42 U.S.C. § 1981. Specifically, he alleges that he was terminated because of his race. Under section 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a) (1994). Claims of race discrimination under section 1981 are analyzed in the same manner as disparate treatment claims brought under Title VII.

A plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics.[9] See id.; see also Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence). Here, Plaintiff has presented only circumstantial evidence of racial discrimination and retaliation. "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by

---

[9] See also McDonnell Douglas, 411 U.S. at 802 n.13 ("The facts necessary will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not applicable in every respect in different factual situations.").

13

the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." Combs, 106 F.3d at 1527.   Under the McDonnell Douglas and Burdine framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally.   See id. at 1527-28.  The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation.   See, e.g., Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984); Lincoln v. Board of Regents of Univ. Sys., 697 F.2d 928, 937 (11th Cir. 1983).  In general, a plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.  See McDonnell Douglas, 411 U.S. at 802 (hiring); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); see also Nix, 738 F.2d at 1185 (discipline); Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

Once the plaintiff has shown a prima facie case and, thereby, has raised the

presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.[10] See Rojas, 285 F.3d at 1342; Combs, 106 F.3d at 1528.  The employer "need not persuade the court that it was actually motivated by the proffered reasons." Burdine, 450 U.S. at 254-55; see Chapman, 229 F.3d at 1024.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[11]  Where the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons.  See Chapman, 229 F.3d at 1024-25.

Despite this shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas and Burdine framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253.

---

[10] See Chapman, 229 F.3d at 1032 (A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion.).

[11] If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that reason is not sufficient.  Chapman, 229 F.3d at 1030.

Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-48 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

### 1.  Prima Facie Case of Discrimination

To establish a prima facie case of disparate treatment, Hilton must show that:

(1) he is a member of a protected class; (2) he was subjected to an adverse employment decision; (3) his employer treated similarly situated white employees more favorably; and (4) he was qualified to do his job. See Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1276 (11th Cir. 2008) (citing Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989)); see also Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006).  Although not discussing the prima facie case directly in their brief, Defendants concede that Hilton is a member of a protected class, and that he was subjected to an adverse employment decision and was qualified to do his job.   Defendants do directly dispute the third element: whether Hilton has established, by a preponderance of the evidence, that Defendants treated similarly situated white employees more favorably than Hilton himself.[12]

_____

[12] Plaintiff also attempts to establish his prima facie case through the "disparate treatment work rules" line of cases.  (Doc. # 31 at 15-16.)  This line of cases provides for the establishment of the prima facie case by showing that a plaintiff did not violate the work rule.  See Gerwens, 874 F.2d at 1539; see also Marshall v. Mayor and Alderman of City of Savannah, Ga., 366 Fed. App. 91, * 5 (11th Cir. 2010) (unpublished).  The court need not determine the validity of such an assertion here, however. Defendants have articulated a legitimate, non-discriminatory reason for terminating Hilton – its investigation concluded that he escalated the situation with Long and brandished a screwdriver as a weapon during the encounter with Long.  The law is clear that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation.  See Chaney v. Southern Railway Co., 847 F.2d 718, 723-24 (11th Cir.1988) (focusing disparate treatment inquiry on whether employer had "reason to believe" employee was trying to cover up on-duty marijuana use); Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1186 (11th Cir.1984) (" '[I]f an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown' ") (quoting Chescheir v. Liberty Mutual Insurance Co., 713 F.2d 1142, 1148 (5th Cir.1983)); Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1256 (5th Cir.1977) ("Even if

A section 1981 case does not turn on whether a defendant treated a plaintiff fairly. If that were the key issue, this court would sit as a super-personnel director. It is well-established that the federal courts should not serve as "super-personnel department[s] that reexamine[ ] an entity's business decisions." Chapman, 229 F.3d at 1030 (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991)). In Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1310 (11th Cir. 1998), modified in non-relevant part and reh'g denied, 151 F.3d 1321 (1998), the Eleventh Circuit emphasized the necessity of showing that similarly situated employees outside the Plaintiff's protected class were treated more favorably: "It is this showing — and not the demonstration of racial animus alone — that addresses the fundamental issue in a Title VII disparate treatment case: whether the defendant intentionally discriminated against the plaintiff." Jones, 137 F.3d at 1313 (citations omitted); see also Silvera v. Orange County School Board, 244 F.3d 1253, 1259 (11th Cir. 2001); Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). Employees are similarly situated when they are accused of the same or similar conduct. See Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001). The

---

[employer] wrongly believed that [Title VII claimant] violated this policy, if [employer] acted on this belief it was not guilty of racial discrimination"); see also discussion infra Section IV.A.2. on pretext.

conduct must be nearly identical "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Id. (citations omitted) (holding that although two employees had arrests for assaulting a child, they were not similarly situated because one had three additional arrests for violent assaults); see also Thomas v. Dep't of Corrections for State of Georgia, 377 Fed.Appx. 873, at *6 (11th Cir. 2010).[13]   That is, it is necessary for the court to consider whether the employees are involved in or accused of the same or similar misconduct and are disciplined in different ways.  See Holifield, 115 F.3d at 1562.  The most important factors in the disciplinary context are "the nature of the offenses committed and the nature of the punishments imposed."  See Maniccia, 171 F.3d at 1368.  "The Eleventh Circuit requires 'that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges.'"  Vickers v. Federal Express Corp., 132 F.Supp.2d 1371, 1380 (S.D. Fla. 2000) (quoting Maniccia, 171 F.3d at 1368-69); see also Wilson, 376 F.3d at 1091 (requiring the comparator's situation to be "nearly identical.")  If a plaintiff fails to show the existence of a similarly situated employee,

---

[13] The court appreciates, as did the Thomas court, that Alexander v. Fulton County, Ga., 207 F.3d 1303, 1334 (11th Cir. 2000) set out a less exacting burden.  But Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 n. 2 (11th Cir. 2006), made clear that the "nearly identical" standard of Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) – a panel decision that pre-dates the Alexander panel decision – applies under the prior precedent rule.

summary judgment is appropriate where no other evidence of discrimination is present.  See id. (citing Mack v. Great Atlantic and Pacific Tea Co., 871 F.2d 179, 182 (1st Cir. 1989)); Jones, 137 F.3d at 1311 ("If Plaintiff fails to identify similarly situated, nonminority employees who were treated more favorably, her case must fail because the burden is on her to establish her prima facie case.").

Plaintiff identifies the following white employees who he contends engaged in similar misconduct and received less severe discipline: Loch McMillan, John Palmer, Vince Smith, George Savage and Steve DeGraffenried.  (Doc. #31 at 16.) Hilton contends that "Loch McMillan and John Palmer are white males who were involved in a physical altercation on the defendants' company property." (Hilton Aff ¶ 14.) Hilton testified that they "got up in each other's faces, was fixing to fight, and I got between them and broke them up." (Hilton Dep. at 17.)  Hilton stated that neither of the men were terminated.  (Hilton Aff. ¶ 14.)   The second altercation highlighted by Hilton was an incident involving Vince Smith and Steve DeGraffenried, both white employees.  (Id.)  Hilton testified that it was a "physical altercation" but does not give any more details.  (Id.)  He stated that  the men were given a suspension.  (Id.)  Finally, Hilton testified that George Savage, a white employee, brought a handgun onto company property and placed the gun in the face of another worker on company property.  (Id.)  According to Hilton, both employees

20

were white males and neither employee was terminated.  (Id.)

The comparator information provided by Hilton fails to be sufficient for a number of reasons.  The alleged altercations all occurred many years before the incident involving Hilton.  When asked during his deposition when these alleged altercations occurred, Hilton testified that the incident involving McMillan and Palmer occurred in 2005.  (Hilton Dep. at 17.)  Hilton further testified that the alleged altercation between Smith and DeGraffenried happened before the incident with McMillan and Palmer.  (Id. at 19.)  The incident where Savage allegedly brought a gun on company property occurred even earlier.  (Id. at 21.)  Therefore, all of the alleged comparator incidents occurred over three to four years before the January 2008 altercation at issue here.

The timing of the alleged incidents is important because each of these incidents involved different decisionmakers.  In fact, Hilton does not provide the court with any information regarding who made the decision regarding the discipline of these employees or what the decisionamkers believed occurred during those altercations. There is no evidence regarding any investigations of those incidents or reasons for the disciplines imposed.  Defendants contend that after 2006, there was a completely new set of decision makers.  There is certainly no evidence in the record that the people who made the decision to terminate Hilton, Graham and Harrell, played any

role in the alleged comparator incidents.

Additionally, Hilton did not provide the court with enough information regarding each alleged incident to properly compare them to the incident at issue here. It is nearly impossible for the court to adequately determine whether Hilton's alleged conduct was "nearly identical" to those he compares himself to. As stated above, the Eleventh Circuit requires "'that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges.'" Vickers, 132 F.Supp.2d 1371, 1380 (quoting Maniccia, 171 F.3d at 1368-69); see also Wilson, 376 F.3d at 1091 (requiring the comparator's situation to be "nearly identical.") With the record before it, it is impossible for the court to make this determination. And the burden is on Hilton as the Plaintiff to establish those "nearly identical" similarities. Jones, 137 F.3d at 1311 ("If Plaintiff fails to identify similarly situated, nonminority employees who were treated more favorably, her case must fail because the burden is on her to establish her prima facie case."). Hilton has utterly failed in this regard.

Maybe more important is the testimony of Hilton regarding other African Americans who were involved in physical altercations on company property, but were not terminated. Specifically, during his deposition, Hilton acknowledged that at least six (6) African American employees were involved in altercations and were not

22

terminated as a result of the alleged incidents.[14]   (Hilton Dep. at 50-55.)   This evidence establishes that Defendants did not treat white employees and African American employees differently.   It erases any inference that could possibly be established from the record here that Defendants treated white employees more favorably than African American employees.   Instead, it shows that Defendants treated <u>Hilton</u> differently than other employees, white and African American.

Having failed to produce sufficient evidence to establish that the non-minority employees with whom he compares his treatment were similarly situated in all aspects, or that their conduct was of comparable seriousness to the conduct for which he was terminated, Hilton's prima facie case of disparate treatment fails.   However, the court recognizes that even where a plaintiff fails to show the existence of a similarly situated employee, summary judgment is only appropriate where no other evidence of discrimination is present.   <u>See Wilson</u>, 376 F.3d 1079, 1092 (11th Cir. 2004).   Therefore, the court must engage in the pretext analysis for purposes of thoroughness.

_____

[14] The testimony is unclear about when these altercations allegedly occurred.  Hilton could not recall when two of them took place, and he said that one of them occurred about two years before his incident, or in 2006.  (Hilton Dep. at 51-55.)

### 2.   Legitimate, Nondiscriminatory Reason for Termination and Pretext

Even if Hilton had successfully established a prima facie case of disparate treatment race discrimination (and to be clear, he has not), his claim would nevertheless fail because Defendants have successfully rebutted any inference of discrimination, and Hilton cannot show that the articulated reason for the demotion was a pretext for discrimination.  See Holifield, 115 F.3d at 1564-65.  Defendants state that Hilton was terminated because the company believed he was involved in an altercation on company property and that when company personnel were attempting to de-escalate the situation, Hilton "became the aggressor, pulled out a screwdriver, brandishing it as a weapon, once again escalating the situation."  (Doc. #29 at 14.) Courts have consistently held fighting on company property to be a legitimate, non-discriminatory reason for adverse actions.   See 45B Am.Jur.2d Job Discrimination § 940 (May 2009) (footnotes omitted);  Green v. Armstrong Rubber Co., 612 F.2d 967 (5th Cir. 1980).  Therefore, Defendants have met their burden of articulation, the presumption of discrimination is destroyed, (assuming one had been created in the first place), and the burden shifts back to Hilton to show by a preponderance of the evidence that race discrimination motivated the decision to terminate him .  See Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950 (11th Cir.

24

2000).

Pretext is established when a plaintiff "present[s] concrete evidence in the form of specific facts" showing that the defendant's proffered reason was pretextual. Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009). "[The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir.2005) (quotation marks omitted); see also Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir.2005) (A plaintiff's evidence of pretext "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."). A plaintiff does not demonstrate pretext by showing that the defendant had a mistaken belief about the facts that formed the basis for the alleged nondiscriminatory reason. Woodard v. Fanboy, L.L.C., 298 F.3d 1261, 1265 (11th Cir. 2002). Instead, the plaintiff must present evidence that the defendant did not honestly believe the facts on which it based its nondiscriminatory reason. Id. Further, when the employer provides a reason "that might motivate a reasonable employer, an employee must meet that reason head on and rebut it . . . ." Chapman, 229 F.3d at 1030. Conclusory

25

allegations and assertions of discrimination are insufficient. See Bryant, 575 F.3d at 1308.

As evidence of pretext, Hilton contends: (1) other white employees, involved in similar misconduct were not terminated, but were given less severe punishment; (2) the contention that Hilton yelled at other employees is pretextual; (3) defendants have a history of treating white males more favorably than African Americans; and (4) there is evidence of racial animosity on the part of one of the decisionmakers, Kelvin Graham. (Doc. #31 at 18-21.)  These arguments are centered on both theories of pretext - that the stated reasons are unworthy of belief and that race more than likely motivated the decision to terminate Hilton.  The court addresses each argument in turn.

Hilton's first pretext argument falls short for the same reasons discussed above with regard to his prima facie case.  There is simply no evidence in the record to support this contention, and, in fact, the evidence suggests that Defendants treated white and African American employees the same - it was just Hilton that was treated differently.

As for Hilton's second argument of pretext, it similarly fails.  Defendants do not assert that Hilton's termination had anything to do with his alleged past history of yelling at other employees and management.  Instead, Defendants use this history

26

as a means of background information for the court in understanding the parties involved in the situation at issue.  Nowhere in Defendants's briefs or evidence do they ever suggest that yelling was a reason for Hilton's termination.

As for Hilton's allegations of the history of treatment of African American employees by Defendants, this evidence also falls short of establishing pretext.  The court uses the term "evidence" lightly, however.  Hilton makes generalized assertions with no information as to time, manner or place.  The assertions do not refer to any decisionmakers or to the alleged African American employees who were treated so poorly.  There is certainly no evidence  whatsoever to support these assertions made in Hilton's brief, other than three generalized statements in Hilton's self-serving affidavit.[15]   In fact, there is not one citation to the record throughout his entire argument regarding the alleged poor treatment of African American employees, which forced the court to search the record - only then did the court find the three generalized statements in Hilton's affidavit.  The Eleventh Circuit requires a plaintiff to "present concrete evidence in the form of specific facts" showing that the defendant's proffered reason was pretextual.  Bryant v. Jones, 575 F.3d 1281, 1308

---

[15] Hilton's affidavit states as follows, in full, regarding these allegations: "I witnessed many discriminatory acts by the defendants, including denying jobs and promotions to African-Americans.  African-Americans were required to use separate restroom facilities and were spoken to in a deragatory manner.  We were paid less than our white counterparts."  (Hilton Aff. ¶ 3.)

(11th Cir. 2009). Hilton's argument does not even come close to meeting this standard.

Finally, Hilton contends that he has evidence of racial animus on the part of one of the decisionmakers, Kelvin Graham. Hilton testified that "[o]n one occasion, plant manager Kelvin Graham said to me, 'No black man should have that much power.'"[16]   (Hilton Aff. ¶ 15.) Although the Eleventh Circuit has held that a supervisor's race-based  derogatory comments can be used to support an inference that an employment decision was motivated by racial bias, see Ross v. Rhodes Furniture, Inc., 146 F.3d 1286, 1291 (11th Cir. 1998), this isolated comment is insufficient to establish pretext. The alleged comment has absolutely nothing to do with the employment decision at issue. Hilton did not provide the court with any information regarding when the comment was made or the specific context within which is was made. Moreover, Graham is African American himself and clearly has a lot of power within the company as the plant manager. Simply put, this lone, isolated, unrelated comment does not tilt the balance and establish pretext in the decision to terminated Hilton.

Although Hilton does not include this item in his list of pretext, throughout his

---

[16] Hilton stated that Graham was referring to Hilton's power as a union representative. (Hilton Aff. ¶ 15.)

brief Hilton vehemently argues that he did not escalate the situation or pull out his screwdriver during the altercation.  These self-serving assertions, however, do not aid in his burden of establishing that Defendants believed that he was innocent of the allegations.  To show that the proffered reason for his demotion was pretextual, Plaintiff must show that Defendants based the decision to discipline Plaintiff on an unreasonable belief that he behaved in the manner alleged.  See, e.g., Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1261 (11th Cir. 2001), cert. denied, 534 U.S. 976 (2001) (pretext means more than a mistake by the employer; actions taken based on a mistaken, non-discriminatory belief do not violate Title VII); Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253 (11th Cir. 2000), cert. denied, 532 U.S. 958 (2001) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken, but that they were in fact motivated by sex.");  Equal Employment Opportunity Comm'n v. Total Sys. Servs., Inc., 221 F.3d 1171 (11th Cir. 2000) (plaintiff could be properly discharged on defendant's good faith belief that she lied in an internal investigation); Alexander v. Fulton County, Ga., 207 F.3d 1303, 1339 (11th Cir. 2000), reh'g denied, 218 F.3d 749 (11th Cir. 2000) ("a plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race."); Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991) (court's pretext inquiry is properly limited to whether the

29

decision-makers believed the employee had engaged in conduct for which he was terminated and if so whether this belief was the reason for the discharge, not whether plaintiff was actually guilty of the conduct); Conner v. Fort Gordon Bus Co., 761 F.2d 1495, 1501 (11th Cir.1985) (employer's belief, honest but mistaken, may nonetheless provide legitimate reason for discharge).  Despite Plaintiff's conclusory assertion to the contrary, see Thomas v. Miami Veterans Med. Cntr., 290 Fed. Appx. 317, 320 (11th Cir. Aug. 26, 2008) (conclusory allegations insufficient to support pretext); Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations, without more, are insufficient to show pretext), he has offered no evidence which contradicts the evidence before this court that Defendants terminated him because it believed that he escalated the situation and brandished the screwdriver as a weapon.

   In the absence of such evidence, the court finds that Defendant is entitled to summary judgment on Plaintiff's claims.  The legitimacy of Defendants' stated reason for terminating Hilton is highlighted by a record replete with evidence that Defendants conducted a thorough investigation into the matter, complete with three other employees corroborating Hilton's actions regarding the incident. See Laosebikan v. Coca-Cola, 167 Fed. Appx. 758, 764 (11th Cir. Jan. 31, 2006) (holding that plaintiff did not establish pretext in retaliation where the company said that it

terminated plaintiff because of insubordination and had evidence of the insubordination); see also Robinson v. LaFarge North America, Inc., 240 Fed. Appx. 824, 829 (11th Cir. June 19, 2007) (holding that where defendant employer had evidence that plaintiff deliberately caused damage to equipment, there was insufficient evidence of pretext); Thomas v. Miami Veterans Med. Cntr., 290 Fed. Appx. 317, 320 (11th Cir. Aug. 26, 2008) (where employer stated it fired plaintiff for failure to follow supervisory instructions, wilful resistance to the instructions, and disrespectful conduct, and the record indicated no evidence, as opposed to conclusory allegations, that the employer fired plaintiff for any reasons other than legitimate, nondiscriminatory reasons, retaliation claimed failed).  Defendants believed in good faith that Hilton escalated the situation and brandished his screwdriver as a weapon, and accordingly terminated Hilton.  See Holifield, 115 F.3d at 1565 ("The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance.").   Whether Hilton actually brandished the screwdriver is not an issue for this court to referee.  See Wilson v. B/E Aerospace, 376 F.3d 1079, 1092 (11th Cir. 2004).  Holmes v. West Palm Beach Hous. Auth., 309 F.3d 752, 755 (11th Cir.2002) ("An employer articulates a legitimate nondiscriminatory reason for termination where the employer had an honest, good faith belief in the reason for termination, even if it turns out that the employer was

31

mistaken in that belief."); <u>E.E.O.C. v. Total Sys. Servs., Inc.</u>, 221 F.3d 1171, 1176 (11th Cir. 2000) ("'Pretext is not demonstrated by showing simply that the employer was mistaken.'") (quoting <u>Sempier v. Johnson & Higgins</u>, 45 F.3d 724, 731 (3d Cir.1995)).  <u>Abel v. Dubberly</u>, 210 F.3d 1334, 1338-1339 (11th Cir. 2000) ("An employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation"); <u>see</u> <u>also</u> <u>Turner v. Texas Instruments, Inc.</u>, 555 F.2d 1251, 1256 (5th Cir. 1977) (Even if an employer wrongly believes that a plaintiff violated its policy, if the employer acted on its good faith belief it is not guilty of discrimination).  A discrimination plaintiff cannot establish pretext by simply asserting that his employer was mistaken.  <u>Elrod v. Sears, Roebuck & Co.</u>, 939 F.2d 1466, 1470 (11th Cir. 1991) (noting that courts do not second guess an employer's business judgment and that plaintiff cannot establish pretext merely by demonstrating that a reported work rule violation did not occur). That is all Plaintiff has done here.

In summary, Hilton has not created a genuine issue of material fact as to whether Defendants' articulated reason for his termination was pretextual.  <u>See</u> <u>Chapman</u>, 229 F.3d at 1024-25.  For this separate and additional reason, Defendants' motion for summary judgment is due to be granted.

### B.  Plaintiff's Retaliation Claim Fails as a Matter of Law.

Generally, to establish a prima facie case of retaliation a plaintiff must show: (1) that he engaged in protected activity; (2) that his employer was aware of that activity; (3) that he suffered an adverse employment action; and (4) there was a causal link between his protected activity and the adverse employment action. Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999) (citing Little v. United Techs., 103 F.3d 956, 959 (11th Cir. 1997)).  If Plaintiff is able to advance a prima facie case of retaliation, the burden then shifts in accordance with McDonnell Douglas to Defendants to articulate legitimate, non-discriminatory reasons for the alleged retaliatory acts.  See Holifield, 115 F.3d at 1566.  Upon articulation, Plaintiff must demonstrate that Defendants; proffered explanation is a pretext for retaliation in order for her claim to survive summary judgment.  See id. That is, the plaintiff must then "demonstrate that [he] will be able to establish at trial that the employer's proffered non-discriminatory reasons are a pretextual ruse designed to mask retaliation." Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999) (citation and internal quotation omitted).

### a.  Prima Facie Case

Plaintiff's prima facie case fails because he did not engage in any activity protected by § 1981.  As evidence of protected activity, Hilton points to two

activities: (1) his participation in the grievance proceedings and representation on behalf of the African-American maintenance workers who were fired by Defendants; and (2) his complaints about the lack of support with Long. (Doc. #31 at 22.)

Theoretically, participation in former employees grievance proceedings involving racial discrimination could possibly amount to protected activity, but Hilton's evidence does not meet the mark here. The evidence presented by Hilton as to this alleged protected activity is as follows, in full:

> A few weeks before I was terminated, I was involved in a grievance proceeding involving several African-American maintenance workers who were terminated for sleeping on the job. However, maintenance workers did not have a set break time, and the workers were sleeping during their break. As a result of my participation in the grievance proceeding, the African American maintenance workers were rehired. As a result of my involvement in getting the African American maintenance workers their job back . . ., the company retaliated against me and fired me a few weeks later.

(Hilton Aff. ¶ 16.) What is lacking in this evidence is that the grievance procedure had anything at all to do with race. The mere fact that the employees were African American does not equate with the fact that there were allegations of race discrimination in the grievance procedure. Instead, the testimony seems to indicate that the grievance involved whether these employees could sleep when they did while on the job. This certainly has nothing to do with race, or anything protected under

34

section 1981.

"[T]o be actionable under § 1981, the retaliation must have been in response to the claimant's assertion of rights that were protected by § 1981." See Hawkins , 163 F.3d at 693.  Section 1981 does not address union activity and certainly does not provide a cause of action to one who claims retaliation based on mere participation in union activity.  That is all the evidence we have here, and the court refuses to infer from Hilton's testimony that merely because the employees for which he participated in the grievance were African American that the grievance involved anything protected under § 1981.  Therefore, this activity is not protected activity for the purpose of establishing a prima facie case of retaliation.

Additionally, Hilton's complaints about Long do not amount to protected activity.  Not every complaint about conditions in the workplace, legitimate or otherwise, constitutes protected activity; retaliation in response to an activity that is not protected does not support a retaliation claim.  There is no evidence that Hilton's complaints surrounding Long disclosed that Hilton's complaints were grounded in racial discrimination.[17]  Defendants cannot be asked to infer that discrimination

---

[17] Hilton states that he told his supervisors that Long did not want to take direction from a black man and repeatedly complained about Long's behavior.  However, that Long potentially harbored some racial discrimination against Hilton and did not want to take direction from him is not the point.  Instead, Hilton must show that he told his supervisors that he believed they were not helping him with his situation with Long out of their alleged racial hostility.  There is no such evidence that Hilton ever complained as such.

occurred merely from the complaints asserted by Hilton.  See Demers v. Adams Homes of Northwest Fla., Inc., 321 Fed. Appx. 847, 852 (11th Cir. 2009) (To engage in protected activity, the employee must, "at the very least," communicate her belief that discrimination is occurring to the employer and cannot rely on the employer to "infer that discrimination has occurred.").  Therefore, those complaints cannot satisfy the protected expression element of the retaliation prima facie case.   See Van Portfliet v. H&R Block Mortg. Corp., 290 Fed. Appx. 301, 304 (11th Cir. Aug. 21, 2008) ("[B]ecause reporting the undisclosed racial slur failed to satisfy the statutorily protected expression requirement, that expression can support no retaliation claim as a matter of law."); see also Pipkins v. City of Temple Terrace, Fla., 267 F.3d 1197, 1201 (11th Cir. 2001) ("Statutorily protected expression includes internal complaints of sexual harassment to superiors as well as complaints lodged with the EEOC . . ."); Coutu v. Martin County Bd. of County Comm'rs, 47 F.3d 1068, 1075 (11th Cir. 1995) ("Unfair treatment, absent discrimination based on race, sex, or national origin, is *not* an unlawful employment practice under Title VII."); Wehunt v. R.W. Page Corp., 352 F.Supp.2d 1342, 1358 (M.D. Ga. 2004) ("At a minimum, an employee must communicate to her employer her belief that discrimination was occurring.  It is not enough to simply complain in a racially neutral way about an employer's practices, and then expect the employer to speculate as to whether such complaints

36

may be motivated by an employee's subjective and undisclosed belief that the employer was engaged in race discrimination.").

### b.  Legitimate, Nonretaliatory Reason for Termination and Pretext

Even assuming that Plaintiff had established a prima facie case of retaliation (which he did not), Defendants have articulated the same legitimate and nonretaliatory reason for Hilton's termination - namely that he escalated the situation with Long and brandished a screwdriver as a weapon.  Hilton has offered no evidence other than that produced as to his disparate treatment claims; the court has earlier determined such evidence to be insufficient.  That same evidence serves Plaintiff here no better than it served him as to those claims.  He simply has not come forward with sufficient evidence to demonstrate a genuine issue of fact as to the truth of each of defendant's proffered reasons for its challenged actions.  See Reeves, 530 U.S. at 147-48; Chapman, 229 F.3d at 1025 & n.11; Combs, 106 F.3d at 1529.  Nor has he otherwise shown that the motives of Defendants was intentional retaliation based upon Plaintiff's race.

In short, in order to prevail on Defendants' summary judgement motion, Plaintiff must come forward with evidence sufficient for a reasonable jury to conclude that the challenged conduct or decisions were indeed motivated by intentional

37

discrimination or retaliation or that Defendants' proffered legitimate reasons were merely a pretext for illegal retaliation. Plaintiff has not carried his burden of production. At best, he is only quarreling with defendant's articulated reasons, which is not sufficient. See Chapman, 229 F.3d at 1030. Summary judgment is, therefore, proper as to Plaintiff's claim of retaliation under 42 U.S.C. § 1981.

## V. Conclusion

In summary, the court finds that no material issues of fact remain and that Defendants Mars Petcare US, Inc. and Doane Petcare Company, Inc. are entitled to judgment as a matter of law as to all claims asserted by Plaintiff.

A separate order will be entered.

**DONE** this the 16th day of May, 2011.

_____
SENIOR UNITED STATES DISTRICT JUDGE